**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION**

| | | |
|---|---|---|
| CYNTHIA HOPKINS, *et al.*; | § | **CIVIL ACTION NO.** |
| *Plaintiffs,* | § | **4:25-cv-00473** |
| | § | |
| v. | § | |
| | § | Judge Charles Eskridge, *presiding* |
| CITY OF COLLEGE STATION, TEXAS; | § | Courtroom 9F |
| *et al.*; | § | 515 Rusk Street |
| *Defendants.* | § | Houston, TX 77002 |

**PARTIES' JOINT/UNIFIED PROPOSED JURY CHARGE**
**AND SPECIAL VERDICT FORM**

Filed pursuant to Section 27(a) of the Court's Procedures. Instructions and questions are separately numbered. Instructions drawn from the Fifth Circuit Pattern Jury Instructions (Civil) (2020 ed., rev. June 2020) are reproduced verbatim where so noted; instructions for which no pattern exists are supported by the cited authority. Definitions, prima facie elements, damages elements, and calculation instructions are included.

Where there is disagreement, the parties' proposed submissions are indicated by different colored highlighting.

GREEN = Plaintiffs' requested submission

YELLOW = Defendants' requested submission

This Joint/Unified proposed charge and verdict form simply combines the separate submissions that were filed by the respective parties on September 17, 2026 (Dkt. 24-7; Dkt. 27-5) in an effort to highlight for the Court where the parties differ in their proposed submissions and where they do not differ. This is being done for the Court's convenience and to better comply with Section 27(a) of the Court's procedures. However, this Joint/Unified version does not add to or substantively alter what was previously filed.

Respectfully submitted,

*/s/ Bradford J. Gilde*
Bradford J. Gilde | TSB#: 24045941 | *Attorney-in-Charge*
FID#: 4010300
bjg@gildelawfirm.com
GILDE LAW FIRM, PLLC
5535 Memorial Drive, Suite F #154,
Houston, Texas 77007
Telephone: (281) 973-2772
Facsimile: (281) 973-2771

/s/ Andrea Chan (by permission)
Andrea Chan
Attorney-in-Charge
Southern District ID No. 14940
State Bar No. 04086600
achan@olsonllp.com
OLSON & OLSON, LLP
Wortham Tower, Suite 600
2727 Allen Parkway
Houston, Texas 77019-2133

-AND-

DURHAM, PITTARD & SPALDING, LLP
Thad D. Spalding | TSB#: 00791708
tspalding@dpslawgroup.com
Shelby J. White | TSB#: 24084086
swhite@dpslawgroup.com
P.O. Box 224626
Dallas, Texas 75222
Telephone: (214) 946-8000
Facsimile: (214) 946-8433

-AND-

Aaron Perry Law Firm
Aaron William Perry | TSB#: 24068270
aaron@aaronperrylawfirm.com
4545 Bissonnet, Suite 202
Bellaire, Texas 77401
Telephone: (713) 393-7788
Facsimile: (713) 586-0380

ATTORNEYS FOR PLAINTIFFS *Cynthia Hopkins and Geoffrey Hopkins, individually and on behalf of the Estate of Mark Hopkins, Deceased; and Alyssa Michelle Wilson*

Telephone: (713) 533-3800
Facsimile: (713) 533-3888

Adam C. Falco, City Attorney
College Station
City Attorney's Office
Southern District ID No. 954564
State Bar No. 24055464
afalco@cstx.gov
1101 Texas Ave.
P.O. Box 9960
College Station, 77842
Telephone: (979) 764-3507
Facsimile: (979) 764-3481

ATTORNEYS FOR DEFENDANTS, City of College Station, Texas, Chief of Police Billy Couch, Officer Dakota Norris, Officer, Investigator Christian Taylor Lovelace, Officer, Investigator Jonathan D. Huth, Officer, Sergeant Richard Benton Keough, Officer Patrick S. McClung, Officer, Operation Commander Steve Brock, Officer Long V. Le, Officer Kelby Perez, Officer Patrick J. McCarthy, and Officer Bureau Commander and Assistant Chief Michael H. Pavelka

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2026, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all counsel of record who have consented in writing to accept this notice as service of this document by electronic means.

*/s/ Bradford J. Gilde*
Bradford J. Gilde

## INSTRUCTION NO. 1 — GENERAL CHARGE

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendant in arriving at your verdict.

**AUTHORITY:** Fifth Circuit Pattern Jury Instructions (Civil) § 3.1 (2020) (verbatim).

## INSTRUCTION NO. 2 – BURDEN OF PROOF: PREPONDERANCE OF THE EVIDENCE

Plaintiffs have the burden of proving their case by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. If you find that Plaintiffs have failed to prove any element of a claim by a preponderance of the evidence, then they may not recover on that claim.

**AUTHORITY:** Fifth Circuit Pattern Jury Instructions (Civil) § 3.2 (2020) (verbatim; plural party names inserted in the pattern's bracketed fields).

## INSTRUCTION NO. 3 – EVIDENCE; STIPULATIONS

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

A "stipulation" is an agreement. When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

**AUTHORITY:** Fifth Circuit Pattern Jury Instructions (Civil) §§ 3.3, 2.3 (2020) (verbatim). The parties' stipulated facts are set out in Section 6 of the Joint Pretrial Order and will be read or provided to the jury.

**INSTRUCTION NO. 4 – WITNESSES; LAW-ENFORCEMENT OFFICER TESTIMONY; DEPOSITION TESTIMONY**

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

You are required to evaluate the testimony of a law-enforcement officer as you would the testimony of any other witness. No special weight may be given to his or her testimony because he or she is a law enforcement officer.

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers have been shown to you. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

**AUTHORITY:** Fifth Circuit Pattern Jury Instructions (Civil) §§ 3.4, 2.15, 2.13 (2020) (verbatim).

## INSTRUCTION NO. 5 – EXPERT WITNESSES

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely on it.

**AUTHORITY:** Fifth Circuit Pattern Jury Instructions (Civil) § 3.5 (2020) (verbatim).

## INSTRUCTION NO. 6 — CHARTS, SUMMARIES, AND DEMONSTRATIVE EVIDENCE

Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence. These charts and summaries are not evidence or proof of any facts. You should determine the facts from the evidence.

Exhibit [specify] is an illustration. It is a party's [description/picture/model] used to describe something involved in this trial. If your recollection of the evidence differs from the exhibit, rely on your recollection.

**AUTHORITY:** Fifth Circuit Pattern Jury Instructions (Civil) §§ 2.7, 2.8 (2020) (verbatim).

## INSTRUCTION NO. 7 — NO INFERENCE FROM FILING SUIT

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

**AUTHORITY:** Fifth Circuit Pattern Jury Instructions (Civil) § 3.6 (2020) (verbatim).

## INSTRUCTION NO. 8 – DISCONTINUANCE AS TO SOME PARTIES

Certain parties are no longer involved in this trial. As jurors, it is your duty to consider the issues among the remaining parties.

> **AUTHORITY:** Fifth Circuit Pattern Jury Instructions (Civil) § 2.5 (2020) (verbatim). See Joint Pretrial Order § 16 (agreed dismissal); the parties' agreed motion in limine forbids any suggestion about the reasons for, or significance of, any party's dismissal.

## INSTRUCTION NO. 9 – SECTION 1983 (UNLAWFUL SEIZURE—UNLAWFUL SEARCH—EXCESSIVE FORCE); UNDER COLOR OF LAW; SEPARATE CONSIDERATION

Plaintiffs claim that the Defendant Officers violated their rights, and the rights of Mark Hopkins and Alyssa Wilson, under the Fourth Amendment to the United States Constitution, and that the City of College Station is liable for certain of those violations under an official policy. Section 1983 of Title 42 of the United States Code provides a claim against anyone who, acting under color of state law, deprives another of his or her rights under the Constitution or laws of the United States. More specifically, Plaintiffs claim that Defendants Dakota Norris, Christian Taylor Lovelace, Jonathan D. Huth, Richard Benton Keough, Steve Brock, Long Le, and Chief of Police Billy Couch violated one or more of the following constitutional rights:

1. the constitutional protection from unreasonable arrest or other "seizure";
2. the constitutional protection from unreasonable search of one's home or dwelling; and
3. the constitutional protection from the use of excessive force during an arrest.

To prove a claim under Section 1983 against an individual Defendant, Plaintiffs must prove each of the following by a preponderance of the evidence: first, that the Defendant committed the acts at issue and thereby deprived the person of a right secured by the Constitution; second, that the Defendant acted under color of state law; and third, that the Defendant's conduct was a proximate cause of the injuries and damages sustained. The parties have stipulated that each Defendant Officer acted under color of state law, so that element is established.

You must give separate consideration to each claim and to each Defendant. Each Defendant is entitled to have his liability determined based on his own conduct and the information known to him at the time; a Defendant is not liable simply because of what another officer did, except as I instruct you regarding bystander liability, supervisory liability, and municipal liability.

**AUTHORITY:** Fifth Circuit Pattern Jury Instructions (Civil) §§ 10.1, 10.2 (2020); 42 U.S.C. § 1983; Graham v. Connor, 490 U.S. 386, 393–97 (1989); Joint Pretrial Order § 8 (agreed propositions; color of law stipulated).

## INSTRUCTION NO. 10 — COUNT 1 — UNREASONABLE MANNER OF ENTRY: KNOCK-AND-ANNOUNCE

The first right Plaintiffs claim Defendants violated is the Fourth Amendment right to be protected from an unreasonable seizure. Plaintiffs claim that Defendants' search and seizure was performed without a valid warrant and, even if valid, the search and seizure was executed in an objectively unreasonable manner which was the moving force behind the death of Mark Hopkins and the injuries to Alyssa Wilson.

The Fourth Amendment protects the right of the people to be secure in their homes against unreasonable searches and seizures. When officers execute a search warrant at a home, part of the reasonableness inquiry is whether the officers announced their identity, authority, and purpose and gave the occupants a reasonable opportunity to admit them before force was used to enter. Officers must knock and announce their identity and purpose, and must be refused admittance — either actually, or constructively by the passage of a reasonable time without response — before they may force entry, unless particularized exigent circumstances excuse compliance.

There is no fixed number of seconds that makes a wait reasonable or unreasonable. You must decide the question under the totality of the circumstances, including: whether the announcements were audible and intelligible to the occupants; the time of day of the execution; whether the occupants were or were likely to be asleep, and the time a person in the occupants' position would reasonably need to awaken, get to the door, and respond; the size and layout of the residence; the nature of the items to be seized under the warrant, including whether they were of a kind that could be quickly destroyed; and any information indicating danger or futility particular to this residence and these occupants. A generalized belief that persons associated with drug offenses may be dangerous is not, by itself, a particularized justification for dispensing with or truncating the announcement requirement.

If you find that the manner of entry did not comply with these requirements and was unreasonable under the totality of the circumstances, then the entry violated the Fourth Amendment. You must also decide, separately for each Defendant whose conduct is submitted to you, whether that Defendant's own conduct — including planning, commanding, or executing the entry — constituted a constitional violation, and whether the violation was a direct cause of the injury, applying the causation instruction I will give you. An officer who participates in an unconstitutional search or entry as a full, active participant — including by providing armed support for it — is liable for his own participation and is not a mere bystander.

If you find that Plaintiffs have proven by a preponderance of the evidence that any of the individual Defendants' conduct in effectuating the search and seizure constituted a violation of Plaintiffs' constitutional right to be free from unreasonable arrest or "seizure", then your verdict will be for Plaintiffs on this claim and you must then consider whether each Defendant is entitled to qualified immunity, which is a bar to liability I will explain later. If Plaintiffs failed to make this showing, then the arrest and seizure was constitutional and your verdict will be for that Defendant on the unreasonable-arrest claim.

**AUTHORITY:** Fifth Circuit Pattern Jury Instructions (Civil) § 10.12 (2020)No pattern instruction addresses knock-and-announce; this instruction is drawn from Wilson v. Arkansas, 514 U.S. 927, 931–36 (1995); Richards v. Wisconsin, 520 U.S. 385, 393–94 (1997); United States v. Banks, 540 U.S. 31, 36, 38–41 (2003); United States v. Valdez, 302 F.3d 320 (5th Cir. 2002); United States v. Cantu, 230 F.3d 148 (5th Cir. 2000); Trent v. Wade, 776 F.3d 368, 383 (5th Cir. 2015); Melear v. Spears, 862 F.2d 1177, 1186 (5th Cir. 1989) (armed officer standing backup "a full, active participant in the search, not a mere bystander"); 18 U.S.C. § 3109. [Plaintiffs further request a separate paragraph submitting the unannounced interior bedroom-door breach as an independent predicate.]

**<u>INSTRUCTION NO. 11 – COUNTS 2 & 3 – EXCESSIVE FORCE (OFFICERS NORRIS, LE, KEOUGH, LOVELACE, BROCK)</u>**

Plaintiffs claim that Officer Norris used excessive deadly force against Mark Hopkins when he shot and killed Mark Hopkins. Plaintiffs also claim that the manner of entry, including the deployment of a distraction device into the occupied residence, constituted excessive force against Alyssa Wilson by Defendants Norris, Le, Keough, Lovelace, and Brock, and that her continued detention after any legitimate law-enforcement purpose had been accomplished was unreasonable.

To prevail on an excessive force claim, Plaintiffs must prove the following by a preponderance of evidence:

1. an injury;
2. that resulted directly from Defendant Norris's use of force that was excessive to the need; and
3. that the excessiveness of the force used by Defendant Norris was objectively unreasonable.

To determine whether the force used was reasonable under the Fourth Amendment, you must carefully balance the nature and quality of the intrusion on Plaintiffs' right to be protected from excessive force against the government's right to use some degree of physical coercion or threat of coercion. In deciding this issue, you must pay careful attention to the totality of the facts and circumstances, including the severity of the crime at issue, whether Plaintiffs posed an immediate threat to the safety of the officer or others, and whether Plaintiffs were actively resisting or attempting to evade arrest. In the case of deadly force, you must also consider whether the suspect posed an immediate and significant threat of death or serious bodily injury to the officer or others at the time the force was used and whether a warning, if feasible, was given before deadly force was used.

The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, and based on the facts and circumstances confronting the officer, without regard to the officer's underlying intent or motivation. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

The reasonableness of a particular use of force is based on what a reasonable officer would do under the circumstances and not on each Defendants' state of mind. You must decide whether a reasonable officer on the scene would view the force as reasonable, without the benefit of 20/20 hindsight. This inquiry must take into account the fact that police officers are sometimes forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

If you find that the Plaintiffs have proved by a preponderance of the evidence that the force used by any of these Defendants was objectively unreasonable, then that Defendant violated Mark Hopkins and Alyssa Wilson's Fourth Amendment protection from excessive force. If any Plaintiff fails to make this showing, then the deadly force was not unconstitutional as to him or her, and your verdict will be for the Defendant on that Plaintiff's excessive force claim.

> **AUTHORITY:** Fifth Circuit Pattern Jury Instructions (Civil) § 10.1 (2020); Graham v. Connor, 490 U.S. 386, 396–97 (1989); Tennessee v. Garner, 471 U.S. 1, 11–12 (1985) ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so"; warning "where feasible"); Barnes v. Felix, 605 U.S. 73, 145 S. Ct. 1353 (2025) (totality of the circumstances; no "moment of the threat" limitation); Graham, 490 U.S. at 396–97; United States v. Ramirez, 523 U.S. 65, 71 (1998) (manner of execution subject to reasonableness review); Michigan v. Summers and progeny [conform authority per charge conference]; JPTO § 8.

## INSTRUCTION NO. 13 – COUNT 4 – BYSTANDER LIABILITY (NORRIS, LE, KEOUGH, HUTH, BROCK, LOVELACE)

Plaintiffs also contend that six of the individual officers who were present on the scene are liable for the unreasonable search and seizure and uses of excessive force discussed in Instructions ## and ##, above, because they knew their fellow officers were violating the Plaintiffs' constitutional rights, had a reasonable opportunity to prevent the harm, and chose not to act.

A warrant is a judicial mandate to an officer to conduct a search or make an arrest, and the officer has a sworn duty to carry out its provisions.

To succeed on this claim against Defendants Norris, Le, Keough, Huth, Brock, and Lovelace, Plaintiffs must prove each of the following by a preponderance of the evidence:

1. Defendants Norris, Le, Keough, Huth, Brock, or Lovelace, conducted an unreasonable search and seizure of the Plaintiffs or used excessive force on Plaintiffs;
2. Defendants Norris, Le, Keough, Huth, Brock, or Lovelace knew that their fellow officers were about to conduct an unreasonable search and seizure or use excessive force;
3. Defendants Norris, Le, Keough, Huth, Brock, or Lovelace had a realistic opportunity to do something to prevent harm from occurring;
4. Defendants Norris, Le, Keough, Huth, Brock, or Lovelace failed to take reasonable steps to prevent harm from occurring; and
5. Defendants Norris, Le, Keough, Huth, Brock, or Lovelace failure to act caused Plaintiffs to suffer harm.

If you find that Plaintiffs have proved each of these things by a preponderance of the evidence, then you must decide for Plaintiffs, and go on to consider the question of damages.

If, on the other hand, you find that Plaintiffs have failed to prove any one of these things by a preponderance of the evidence, then you must decide for Defendants, and you will not consider the question of damages as it relates to this question only.

> **AUTHORITY:** Because there is no Fifth Circuit pattern instruction for bystander liability, these instructions come from the Federal Civil Jury Instructions of the Seventh Circuit, 2017 edition, section 7.22. These instructions, however, are consistent with Fifth Circuit authority. *See also* Joint Pretrial Order § 8 (agreed elements and authority).
>
> United States v. Leon, 468 U.S. 897, 920 n.21 (1984).

## INSTRUCTION NO. 14 – COUNT 4 – SUPERVISORY LIABILITY (COUCH, BROCK, KEOUGH, HUTH, LOVELACE)

Plaintiffs also claim that Defendants Couch, Brock, Keough, Huth, and Lovelace are liable for the other Defendants' constitutional violations as their supervisors. A supervisory officer, like Defendants Couch, Brock, Keough, Huth, and Lovelace, cannot be held liable merely because his subordinate violated someone's constitutional rights. To prove a claim against Defendants Couch, Brock, Keough, Huth, and Lovelace, Plaintiffs must show that Defendants Couch, Brock, Keough, Huth, or Lovelace's conduct caused the denial of the constitutional rights.

To prevail on their claim against Defendants Couch, Brock, Keough, Huth, and Lovelace, Plaintiffs must prove by a preponderance of the evidence that:

1. A subordinate of Defendants Couch, Brock, Keough, Huth, and Lovelace violated Plaintiffs' constitutional rights;

2. Defendants Couch, Brock, Keough, Huth, and Lovelace knew that their subordinate was about to violate the Plaintiffs' constitutional rights or implemented, approved, or maintained a policy, practice, or plan so deficient that the policy itself caused the violation of Plaintiffs' constitutional rights; and

3. Defendants Couch, Brock, Keough, Huth, and Lovelace acted with deliberate indifference.

For Defendants Couch, Brock, Keough, Huth, and Lovelace to act with deliberate indifference, each Defendants must be: (1) aware of facts from which the inference could be drawn that a substantial risk of serious harm or a violation of constitutional rights exists; and (2) must actually draw that inference. Deliberate indifference requires a showing of more than negligence or even gross negligence. Accordingly, for a supervisor to act with deliberate indifference, he must usually know about a pattern of similar violations. To show deliberate indifference based on a single incident, it must have been apparent or obvious that a constitutional violation was the highly predictable consequence of the particular policy.

**AUTHORITY:** Fifth Circuit Pattern Jury Instructions (Civil) § 10.4 (2020); Seventh Circuit Pattern Jury Instructions (Civil) § 7.23 (2017); City of Canton v. Harris, 489 U.S. 378, 388–90 (1989); Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404–05 (1997); Terebesi v. Torreso, 764 F.3d 217 (2d Cir. 2014) (planner liability).

INSTRUCTION NO. 15 – COUNT 6 – MUNICIPAL LIABILITY (CITY OF COLLEGE STATION)

In addition to their claims against the individual officers, Plaintiffs are suing the City of College Station. Plaintiffs contend the City is liable because: (a) it maintained an official policy or custom, in effect on February 8, 2023, of conducting simultaneous knock-and-announce entries that promoted unconstitutional search and seizures; and (b) after the shooting, the final policymaker—Chief of Policy Billy Couch—approved the officers' conduct and the basis for it as compliant with City policy, ordering no discipline, retraining, or policy change.

A city is not liable under Section 1983 simply because it employs a person who violated the Constitution, unless the constitutional violation was caused by the City's policy or custom.

To prevail on Plaintiffs' official policy or custom claim against the City, Plaintiffs must prove by a preponderance that:

1. an official policy or custom existed;
2. a policymaker for the City knew or should have known about the policy or custom;
3. the policymaker was deliberately indifferent; and
4. the policy or custom was the moving force leading to the constitutional violation.

A "policy" can be a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the City's officers.

A "custom" is a persistent, widespread practice of City officials or employees that, although not formally adopted, is so common and well-settled that it fairly represents City policy. But to show custom, Plaintiffs must prove that either the City's governing body or some official with policymaking authority knew or should have known about the custom.

For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists or a violation of constitutional rights exists, and he must also draw the inference.

To prevail on the Plaintiffs' ratification claim, Plaintiffs must prove each of the following elements by a preponderance of the evidence:

1. The individual officer Defendants violated Plaintiffs' constitutional rights;
2. Chief Couch acted under color of state law;
3. Chief Couch had final policymaking authority from the City of College Station concerning the individual officer Defendants' conduct; and
4. Chief Couch ratified those individual officer Defendants' constitutional violations, that is, Chief Couch knew of and specifically made a deliberate choice to approve those violations and the basis for them.

Elements 2 and 3 require no proof as you are instructed that Chief Couch was acting "under color of state law" and had final policymaking authority from the City of College Station concerning the individual officer Defendants' conduct at issue.

Therefore, you are only concerned here with whether Plaintiffs have proven Elements1 and 5 by a preponderance of the evidence. If you find that one or more of the Plaintiffs have proven those elements, your verdict should be for that Plaintiff. If, on the other hand, one or more of the Plaintiffs failed to prove Elements 1 or 5, your verdict should be for the Defendant City of College Station.

> **AUTHORITY:** Fifth Circuit Pattern Jury Instructions (Civil) § 10.5 (2020) (official policy or custom); Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 9.7 (2025 ed.) ("9th Cir. PJI") (Section 1983 Claim Against Local Governing Body Defendants Based on Ratification—Elements and Burden of Proof); Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) ("execution of a government's policy or custom . . . inflicts the injury"); Bryan Cnty., 520 U.S. at 404–05 (moving force; rigorous causation); Brown v. Burmaster, No. 25-30541 (5th Cir. July 14, 2026) (verdict must pair liability with causation finding). Qualified immunity is not available to the City; no qualified-immunity question applies to Count 6. Owen v. City of Independence, 445 U.S. 622 (1980).

## INSTRUCTION NO. 16 – QUALIFIED IMMUNITY (INDIVIDUAL DEFENDANTS) [IF SUBMITTED]

[Submitted only as to Defendants and claims the Court determines require jury resolution of disputed historical facts. The Court will instruct the jury on the clearly established law applicable to each claim; the jury answers the fact questions in the Special Verdict Form; the Court applies the law to the facts found. Plaintiffs' position: the disputed historical facts are submitted through Questions 1–6 and the claim-specific questions, and the ultimate immunity determination is reserved to the Court on the facts found, per the framework in Plaintiffs' Trial Memorandum of Law Part V.A. Defendants' position: is contained in their Trial Memorandum of Law.]

If you find that each Plaintiff has proven each essential element of his or her claims of unreasonable search and seizure or excessive force under 42, U.S.C. § 1983 as to one or more of the individual officer Defendants, then you must consider whether those Defendants entitled to what the law calls "qualified immunity". Qualified immunity bars a defendant's liability even if he violated a plaintiff's constitutional rights. Qualified immunity exists to give government officials breathing room to make reasonable but mistaken judgments about open legal questions. Qualified immunity provides protection from liability for all but the plainly incompetent government officers, or those who knowingly violate the law. It is the Plaintiffs' burden to prove by a preponderance of the evidence that qualified immunity does not apply in this case.

Qualified immunity applies if a reasonable officer could have believed that the search and seizure employed by these Defendants or the use of force was lawful in light of clearly established law and the information each Defendant possessed. But Defendants are not entitled to qualified immunity if, at the time of the search and seizure or the use of force, a reasonable officer with the same information these Defendants had could not have believed that his actions were lawful. Law enforcement officers are presumed to know the clearly established constitutional rights of individuals they encounter.

In this case, with regard to the Defendants' search and seizure, the clearly established law at the time required that officers knock and announce their presence and wait a reasonable amount of time before a forcible entry, unless doing so would be dangerous or futile, or would inhibit the investigation of the crime by, for example, allowing the destruction of evidence.

In this case, with regard to the Defendants' use of force, the clearly established law at the time was that a police officer could not use deadly force when there is no immediate and significant threat of death or serious physical injury and no prior warning given prior to the use of deadly force.

Finally, in this case, with regard to Defendants' bystander or supervisory liability, the clearly established law at the time was that an individual officer has an obligation to intervene if he or she knows a constitutional violation is being committed by a fellow officer and has a reasonable opportunity to prevent the harm, and that a supervisory officer has an obligation to act or otherwise prevent a constitutional violation perpetrated by his subordinate.

If, after considering the scope of discretion and responsibility generally given to law enforcement officers in performing their duties and after considering all of the circumstances of this case as

they would have reasonably appeared to the individual officer Defendants at the time of the search and seizure and use of force, you find that the Plaintiffs failed to prove that no reasonable officer could have believed that the officers' conduct was reasonable, then those Defendants are entitled to qualified immunity, and your verdict must be for that particular Defendant. But if you find that a particular Defendant violated a Plaintiff's constitutional rights and that Defendant is not entitled to qualified immunity as to those individuals, then your verdict must be for the Plaintiffs on that claim.

**AUTHORITY:** Fifth Circuit Pattern Jury Instructions (Civil) § 10.3 (2020); *Singleton v. Casanova,* No. 22-50327, 2024 WL 2891900, at *12 (5th Cir. June 10, 2024); Melear v. Spears, 862 F.2d 1177, 1184, 1187–88 (5th Cir. 1989) (Higginbotham, J., concurring) (Rule 49 interrogatories); Presley v. City of Benbrook, 4 F.3d 405, 409–10 & nn.4–5 (5th Cir. 1993); Brown v. Burmaster, No. 25-30541 (5th Cir. July 14, 2026); Hope v. Pelzer, 536 U.S. 730, 741 (2002).

## INSTRUCTION NO. 17 – CAUSATION

A Defendant's conduct is a proximate cause of an injury if the conduct played a substantial part in bringing about the injury, and the injury was either a direct result or a reasonably probable consequence of the conduct. There can be more than one proximate cause of an injury. A Defendant whose unconstitutional conduct sets in motion a foreseeable chain of events that results in injury is liable for that injury; the fact that another event – including a foreseeable reaction of a person inside the home – is closer in time to the injury does not break the chain of causation if that event was a reasonably foreseeable consequence of the Defendant's conduct.

> **AUTHORITY:** County of Los Angeles v. Mendez, 581 U.S. 420, 430–31 (2017) (ordinary proximate-cause principles govern § 1983; foreseeability analysis); United States v. Cantu, 230 F.3d 148 (5th Cir. 2000) (unannounced entry "heightens the possibility that the occupants of a house will react violently against the unknown aggressor"); Fifth Circuit Pattern Jury Instructions (Civil) § 10.1 (2020) (causation element).

## INSTRUCTION NO. 18 – COMPENSATORY DAMAGES

If one or more of the Plaintiffs have proven their claims against one or more of the Defendants by a preponderance of the evidence, you must determine the damages to which those Plaintiffs are entitled. You should not interpret the fact that I am giving instructions about Plaintiffs' damages as an indication in any way that I believe that the Plaintiffs should, or should not, win this case. It is your task to decide whether any or all of the Defendants are liable. I am instructing you on damages only so that you will have guidance in the event you decide that any of the Defendants are liable and that the Plaintiffs are entitled to recover money from those Defendants, if any.

If you find that one or more of the Defendants are liable to the Plaintiffs, then you must determine an amount that is fair compensation for the Plaintiffs' damages. These damages are called compensatory damages. The purpose of compensatory damages is to make Plaintiffs whole—that is, to compensate Plaintiffs for the damages that they suffered. Compensatory damages are not limited to expenses that Plaintiffs may have incurred because of their injuries. If a Plaintiff wins, that Plaintiff is entitled to compensatory damages for the physical injury, pain and suffering and mental anguish that the Plaintiff has suffered because of the Defendants' wrongful conduct.

You may award compensatory damages only for injuries that a Plaintiff proves were proximately caused by the Defendants' allegedly wrongful conduct. The damages that you award must be fair compensation for all of Plaintiffs' damages, no more and no less. You should not award compensatory damages for speculative injuries, but only for those injuries that Plaintiffs have actually suffered or that Plaintiffs are reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that Plaintiffs prove the amount of their losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence:

> **AUTHORITY:** Fifth Circuit Pattern Jury Instructions (Civil) §§ 15.1, 15.2 (2020); Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 306–10 (1986); Carey v. Piphus, 435 U.S. 247, 254–57 (1978); 42 U.S.C. § 1988; Tex. Civ. Prac. & Rem. Code §§ 71.002, 71.004, 71.021.

## INSTRUCTION NO. 18A—PERSONAL INJURY AND MENTAL ANGUISH

You may award damages for any bodily injury that Plaintiffs sustained and any pain and suffering and mental anguish that Plaintiffs experienced in the past or will experience in the future as a result of the bodily injury. No evidence of the value of intangible things, such as mental or physical pain and suffering, has been or need be introduced. You are not trying to determine value, but an amount that will fairly compensate Plaintiffs for the damages they have suffered, if any. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award that you make must be fair in the light of the evidence.

**AUTHORITY:** Fifth Circuit Pattern Jury Instructions (Civil) §15.3 (2020).

**INSTRUCTION NO. 18B—EMOTIONAL DISTRESS**

To recover compensatory damages for mental and emotional distress, Plaintiffs must prove that they suffered a specific discernable injury with credible evidence. Hurt feelings, anger, and frustration are part of life and are not the types of harm that could support a mental anguish award. Evidence of mental anguish need not be corroborated by doctors, psychologists, or other witnesses, but Plaintiffs must support their claims with competent evidence of the nature, extent, and duration of the harm. Damages for mental or emotional distress must be based on the evidence at trial. They may not be based on speculation or sympathy.

**AUTHORITY:** Fifth Circuit Pattern Jury Instructions (Civil) §10.13 (2020).

**INSTRUCTION NO. 18C—SURVIVAL DAMAGES (ESTATE OF MARK HOPKINS)**

You may award damages to the Estate of Mark Hopkins for:

1. **Physical pain.** "Physical pain" means the conscious physical pain experienced by Mark Hopkins before his death;

2. **Mental anguish.** "Mental anguish" means the emotional pain, torment, and suffering experienced by Mark Hopkins before his death; and

3. **Funeral and burial expenses.** "Funeral and burial expenses" means the reasonable amount of expenses for funeral and burial for Mark Hopkins reasonably suitable to his station in life.

**AUTHORITY:** State Bar of Texas, Texas Pattern Jury Charges: General Negligence, Intentional Personal Torts & Workers' Compensation PJC 30.3 (2024 ed.) ("PJC-Negligence").

**INSTRUCTION NO. 18D—WRONGFUL DEATH DAMAGES (CYNTHIA HOPKINS & GEOFFREY HOPKINS)**

As to Cynthia Hopkins and Geoffrey Hopkins, you should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence:

1. **Pecuniary loss** sustained in the past and that, in reasonable probability, will be sustained in the future.

   "Pecuniary loss" means the loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value, that Cynthia Hopkins and Geoffrey Hopkins, in reasonable probability, would have received from Mark Hopkins had he lived.

2. **Loss of companionship and society** sustained in the past and that, in reasonable probability, will be sustained in the future.

   "Loss of companionship and society" means the loss of the positive benefits flowing from the love, comfort, companionship, and society that Cynthia Hopkins and Geoffrey Hopkins, in reasonable probability, would have received from Mark Hopkins had he lived.

3. **Mental anguish** sustained in the past and that, in reasonable probability, will be sustained in the future.

   "Mental anguish" means the emotional pain, torment, and suffering experienced by Cynthia Hopkins and Geoffrey Hopkins because of the death of Mark Hopkins.

In determining damages for loss of companionship and society and mental anguish, you may consider the relationship between Cynthia Hopkins and Geoffrey Hopkins and the deceased, Mark Hopkins, their living arrangements, any extended absences from one another, the harmony of their family relations, and their common interests and activities.

**AUTHORITY:** State Bar of Texas, Texas Pattern Jury Charges: General Negligence, Intentional Personal Torts & Workers' Compensation PJC 29.6 (2024 ed.) ("PJC-Negligence").

**INSTRUCTION NO. 18E—PERSONAL INJURY DAMAGES (ALYSSA WILSON)**

As to Alyssa Wilson, you should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence:

1. **Physical pain** sustained in the past and that, in reasonable probability, will be sustained in the future.

2. **Mental anguish** sustained in the past and that, in reasonable probability, will be sustained in the future.

3. **Physical impairment** sustained in the past and that, in reasonable probability, will be sustained in the future.

4. **Reasonable medical and psychological care expenses** incurred in the past and that, in reasonable probability, will be incurred in the future.

**AUTHORITY:** State Bar of Texas, Texas Pattern Jury Charges: General Negligence, Intentional Personal Torts & Workers' Compensation PJC 28.3 (2024 ed.) ("PJC-Negligence").

**<u>INSTRUCTION NO. 19 – NOMINAL DAMAGES</u>**

If you find that a Defendant violated a plaintiff's constitutional rights but that the plaintiff suffered no actual injury from that violation, you must award nominal damages of one dollar.

**AUTHORITY:** Fifth Circuit Pattern Jury Instructions (Civil) § 15.6 (2020) [conform verbatim]; Carey v. Piphus, 435 U.S. 247, 266–67 (1978).

**INSTRUCTION NO. 20 – PUNITIVE DAMAGES (INDIVIDUAL DEFENDANTS ONLY)**

If you find that any of the Defendants are liable for Plaintiffs' injuries, you must award Plaintiffs the compensatory damages that they have proved. You may, in addition, award punitive damages if you find that any of the individual Defendants acted with malice or with reckless indifference to the right of Plaintiffs. One acts with malice when one purposefully or knowingly violates another's rights or safety. One acts with reckless indifference to the rights of others when one's conduct, under the circumstances, manifests a complete lack of concern for the rights or safety of another. Plaintiffs have the burden of proving that punitive damages should be awarded by a preponderance of the evidence.

A person acts recklessly in engaging in conduct if:

(a) the person knows of the risk of harm created by the conduct or knows facts that make the risk obvious to another in the person's situation, and

(b) the precaution that would eliminate or reduce the risk involves burdens that are so slight relative to the magnitude of the risk as to render the person's failure to adopt the precaution a demonstration of the person's indifference to the risk.

The purpose of punitive damages is to punish and deter, not to compensate. Punitive damages serve to punish a defendant for malicious or reckless conduct and, by doing so, to deter others from engaging in similar conduct in the future. You are not required to award punitive damages.

If you do decide to award punitive damages, you must use sound reason in setting the amount. Your award of punitive damages must not reflect bias, prejudice, or sympathy toward any party. It should be presumed that Plaintiffs have been made whole by compensatory damages, so punitive damages should be awarded only if an individual Defendants' misconduct is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.

If you decide to award punitive damages, the following factors should guide you in fixing the proper amount:

1. The reprehensibility of that Defendant's conduct, including but not limited to whether there was deceit, cover-up, insult, intended or reckless injury, and whether that Defendant's conduct was motivated by a desire to augment profit; and

2. The ratio between the punitive damages you are considering awarding and the amount of harm that was suffered by the victim or with which the victim was threatened; and

3. The possible criminal and civil sanctions for comparable conduct.

**AUTHORITY:** Fifth Circuit Pattern Jury Instructions (Civil) § 15.7 (2020); Smith v. Wade, 461 U.S. 30, 56 (1983) ("evil motive or intent, or . . . reckless or callous indifference to the federally protected rights of others"); JPTO § 8 (agreed: no punitive damages against the City); *see also* Fifth Circuit Pattern Jury Instructions (Civil) § 15.7, n. 2 (noting that "it may

be advisable to give a more detailed definition of recklessness, such as the one found in the Restatement (Third) of Torts"). .

## INSTRUCTION NO. 21 – DUTY TO DELIBERATE; NOTES

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a presiding juror to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your presiding juror must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the presiding juror should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.

> **AUTHORITY:** Fifth Circuit Pattern Jury Instructions (Civil) § 3.7 (2020) (verbatim; Alternate 2 (notes permitted); "presiding juror" selected from the pattern's bracketed alternatives).

# SPECIAL VERDICT FORM

Answer each question as directed, based on a preponderance of the evidence. Answer separately for each Defendant and each Plaintiff where indicated. Follow the conditional directions between questions.

## COUNT 1: UNREASONABLE SEARCH AND SEIZURE

**QUESTION NO. 1.** Do you find that Plaintiffs have proven by a preponderance of the evidence that the manner of entry into 925 Spring Loop by those listed below [– including the announcements, the interval before the mechanical breach, and the deployment of the distraction device – was objectively unreasonable under the totality of the circumstances, in violation of / violated] the Plaintiffs' Fourth Amendment rights?

ANSWER "Yes" or "No" for each of the following:

a. Officer Dakota Norris: "Yes" ____ "No" ____

b. Investigator Christian Lovelace: "Yes" ____ "No" ____

c. Investigator Jonathan Huth: "Yes" ____ "No" ____

d. Sergeant Richard Keough: "Yes" ____ "No" ____

e. Lieutenant Steven Brock: "Yes" ____ "No" ____

f. Officer Long Le: "Yes" ____ "No" ____

## COUNT 2: DEADLY FORCE

**QUESTION NO. 2.** Do you find that Plaintiffs Cynthia and Geoffrey Hopkins have proven by a preponderance of the evidence that on February 8, 2023, Defendant Dakota Norris [used excessive, deadly force / subjected Mark Hopkins to excessive force] in violation of Mark Hopkins' Fourth Amendment rights?

ANSWER ("Yes" or "No"): ______________

## COUNT 3: FORCE AND DETENTION (ALYSSA WILSON)

**QUESTION NO. 3.** Do you find that Plaintiff Alyssa Wilson has proven by a preponderance of the evidence that on February 8, 2023, any of those listed below subjected her to excessive force in violation of her Fourth Amendment rights?

ANSWER "Yes" or "No" for each of the following:

a. Officer Dakota Norris: "Yes" ____ "No" ____

b. Investigator Christian Lovelace: "Yes" ____ "No" ____

c. Investigator Jonathan Huth: "Yes" ____ "No" ____

d. Sergeant Richard Keough: "Yes" ____ "No" ____

e. Lieutenant Steven Brock: "Yes" ____ "No" ____

f. Officer Long Le: "Yes" ____ "No" ____

**QUESTION NO. 4.** Do you find that Plaintiff Alyssa Wilson has proven by a preponderance of the evidence that on February 8, 2023, any of those listed below subjected her to continued detention, after any legitimate law-enforcement purpose had been accomplished, in violation of her Fourth Amendment rights?

ANSWER "Yes" or "No" for each of the following:

a. Officer Dakota Norris: "Yes" ____ "No" ____

b. Investigator Christian Lovelace: "Yes" ____ "No" ____

c. Investigator Jonathan Huth: "Yes" ____ "No" ____

d. Sergeant Richard Keough: "Yes" ____ "No" ____

e. Lieutenant Steven Brock: "Yes" ____ "No" ____

f. Officer Long Le: "Yes" ____ "No" ____

**PART E – COUNT 4: BYSTANDER AND SUPERVISORY LIABILITY**

If you answered "Yes" as to any of those officers listed in Questions 1-4, then answer the following questions. Otherwise, do not answer Questions 5 or 6.

**QUESTION NO. 5.** For each Defendant you found to have violated the Fourth Amendment rights of Mark Hopkins or Alyssa Wilson, do you find that Plaintiffs have proven by a preponderance of the evidence that any of those listed below knew that one of those officers were violating a constitutional right, had a reasonable opportunity to prevent the harm, and chose not to act?

Answer "Yes" or "No" for each:

a. Officer Dakota Norris: "Yes" ____ "No" ____

b. Investigator Jonathan Huth: "Yes" ____ "No" ____

c. Sergeant Richard Keough: "Yes" ____ "No" ____

d. Lieutenant Steven Brock: "Yes" ____ "No" ____

e. Officer Long Le: "Yes" ____ "No" ____

**QUESTION NO. 6.** For each Defendant you found to have violated the Fourth Amendment rights of Mark Hopkins or Alyssa Wilson, do you find that Plaintiffs have proven by a preponderance of the evidence that any of those Defendants' supervisors listed below knew that their subordinate was about to violate the Plaintiffs' constitutional rights or implemented, approved, or maintained a policy, practice, or plan so deficient that the policy itself caused the violation of Plaintiffs' constitutional rights, and acted with deliberate indifference in allowing his subordinate to do so?

Answer "Yes" or "No" for each:

a. Sergeant Richard Keough: "Yes" ____ "No" ____

b. Lieutenant Steven Brock: "Yes" ____ "No" ____

c. Chief Billy Couch: "Yes" ____ "No" ____

**PART F – QUALIFIED IMMUNITY FACT QUESTIONS [IF SUBMITTED BY THE COURT]**

**QUESTION NO. 7A (UNREASONABLE SEARCH AND SEIZURE).** For each Defendant found by you to have caused a constitutional violation in Question1, do you find that Plaintiffs have proven by a preponderance of the evidence that no reasonable officer could have believed that the unreasonable search and seizure was lawful, in light of the clearly established law and the information each officer possessed at the time?

Answer "Yes" or "No" for each:

a. Officer Dakota Norris: "Yes" ____ "No" ____

b. Investigator Christian Lovelace: "Yes" ____ "No" ____

c. Investigator Jonathan Huth: "Yes" ____ "No" ____

d. Sergeant Richard Keough: "Yes" ____ "No" ____

e. Lieutenant Steven Brock: "Yes" ____ "No" ____

f. Officer Long Le: "Yes" ____ "No" ____

**QUESTION NO. 7B (DEADLY FORCE).** If you answered "Yes" as to Question 2, do you find that Plaintiffs have proven by a preponderance of the evidence that no reasonable officer could have believed that the excessive, deadly force used by Officer Dakota Norris was lawful, in light of the clearly established law and the information each officer possessed at the time?

Answer "Yes" or "No."

"Yes" ____ "No" ____

**QUESTION NO. 7C (EXCESSIVE FORCE—ALYSSA WILSON).** For each Defendant found by you to have caused a constitutional violation in Question 3, do you find that Plaintiffs have proven by a preponderance of the evidence that no reasonable officer could have believed that the use of excessive force was lawful, in light of the clearly established law and the information each officer possessed at the time?

Answer "Yes" or "No" for each:

a. Officer Dakota Norris: "Yes" ____ "No" ____

b. Investigator Christian Lovelace: "Yes" ____ "No" ____

c. Investigator Jonathan Huth: "Yes" ____ "No" ____

d. Sergeant Richard Keough: "Yes" ____ "No" ____

e. Lieutenant Steven Brock: "Yes" ____ "No" ____

f. Officer Long Le: "Yes" ____ "No" ____

**QUESTION NO. 7D (CONTINUED DETENTION—ALYSSA WILSON).** For each Defendant found by you to have caused a constitutional violation in Question 4, do you find that Plaintiffs have proven by a preponderance of the evidence that no reasonable officer could have believed that the continued detention of Alyssa Wilson, after any legitimate law-enforcement

purpose had been accomplished, was lawful, in light of the clearly established law and the information each officer possessed at the time?

Answer "Yes" or "No" for each:

a. Officer Dakota Norris: "Yes" ____ "No" ____

b. Investigator Christian Lovelace: "Yes" ____ "No" ____

c. Investigator Jonathan Huth: "Yes" ____ "No" ____

d. Sergeant Richard Keough: "Yes" ____ "No" ____

e. Lieutenant Steven Brock: "Yes" ____ "No" ____

f. Officer Long Le: "Yes" ____ "No" ____

**QUESTION NO. 7E (BYSTANDER LIABILITY).** For each Defendant found by you to have caused a constitutional violation in Question 5, do you find that Plaintiffs have proven by a preponderance of the evidence that no reasonable officer could have believed that his failure to act to prevent the harm to the Plaintiffs was lawful, in light of the clearly established law and the information each officer possessed at the time?

Answer "Yes" or "No" for each:

a. Officer Dakota Norris: "Yes" ____ "No" ____

b. Investigator Jonathan Huth: "Yes" ____ "No" ____

c. Sergeant Richard Keough: "Yes" ____ "No" ____

d. Lieutenant Steven Brock: "Yes" ____ "No" ____

e. Officer Long Le: "Yes" ____ "No" ____

**QUESTION NO. 7F (SUPERVISOR LIABILITY).** For each Defendant found by you to have caused a constitutional violation in Question 5, do you find that Plaintiffs have proven by a preponderance of the evidence that no reasonable officer could have believed that his conduct as a supervisor was lawful, in light of the clearly established law and the information each officer possessed at the time?

Answer "Yes" or "No" for each:

a. Sergeant Richard Keough: "Yes" ____ "No" ____

b. Lieutenant Steven Brock: "Yes" ____ "No" ____

c. Chief Billy Couch: "Yes" ____ "No" ____

**QUESTION NO. 7.** For each Defendant found by you to have caused a constitutional violation in Questions 1-6, do you find that Plaintiffs have proven by a preponderance of the evidence that no reasonable officer could have believed that the conduct was lawful, in light of the learly established law and the information each officer possessed at the time?

Answer "Yes" or "No" for each:

a. Officer Dakota Norris: "Yes" ____ "No" ____

b. Investigator Christian Lovelace: "Yes" ____ "No" ____

c. Investigator Jonathan Huth: “Yes” ____ “No” ____

d. Sergeant Richard Keough: “Yes” ____ “No” ____

e. Lieutenant Steven Brock: “Yes” ____ “No” ____

f. Officer Long Le: “Yes” ____ “No” ____

*Drafting note: Question 7 tracks the interrogatory form preserved in Presley v. City of Benbrook, 4 F.3d 405, 410 n.4 (5th Cir. 1993). Plaintiffs' primary position is that Questions 1–6 supply the disputed historical facts and the Court reserves the ultimate immunity determination; Question 7 is submitted in the alternative.*

**PART G – COUNT 6: MUNICIPAL LIABILITY**

If you answered “Yes” as to any of the individual officer Defendants listed in Questions 1-6, the answer Questions 8 and 9. Otherwise, do not answer Questions 8 and 9.

**QUESTION NO. 8 (Official Policy/Custom).** Do you find that Plaintiffs have proven by a preponderance of the evidence that, on February 8, 2023, the City of College Station maintained an official policy or custom of conducting simultaneous knock-and-announce entries in the execution of search warrants that was a moving force in causing the death of Mark Hopkins and the injuries to Alyssa Wilson?

ANSWER (“Yes” or “No”): ______________

**QUESTION NO. 9 (Ratification).** Do you find that Plaintiffs have proven by a preponderance of the evidence that Chief Couch knew of and specifically made a deliberate choice to approve of the unconstitutional conduct of his officers and the basis for that conduct?

ANSWER (“Yes” or “No”): ______________

**PART H – DAMAGES**

**QUESTION NO. 10 (Mark Hopkins–Survival Claim).** What sum of money, if paid now in cash, would fairly and reasonably compensate the Estate of Mark Hopkins for:

a. Physical pain.

Answer in dollars and cents for damages, if any.

Answer: $_______________

b. Mental anguish.

Answer in dollars and cents for damages, if any.

Answer: $_______________

3. Funeral and burial expenses.

Answer in dollars and cents for damages, if any.

Answer: $_______________

**QUESTION NO. 11 (WRONGFUL DEATH):** What sum of money, if paid now in cash, would fairly and reasonably compensate Cynthia and Geoffrey Hopkins for their damages, if any, resulting from the death of their son, Mark Hopkins?

Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

Answer in dollars and cents, for damages, if any.

a. Pecuniary loss sustained in the past.

Cynthia Hopkins Answer: _______________

Geoffrey Hopkins Answer: _______________

b. Pecuniary loss that, in reasonable probability, will be sustained in the future.

Cynthia Hopkins Answer: _______________

Geoffrey Hopkins Answer: _______________

c. Loss of companionship and society sustained in the past.

Cynthia Hopkins Answer: _______________

Geoffrey Hopkins Answer: _______________

d. Loss of companionship and society that, in reasonable probability, will be sustained in the future.

Cynthia Hopkins Answer: _______________

Geoffrey Hopkins Answer: _______________

e. Mental anguish sustained in the past.

Cynthia Hopkins Answer: _______________

Geoffrey Hopkins Answer: _______________

f. Mental anguish that, in reasonable probability, will be sustained in the future.

Cynthia Hopkins Answer: _______________

Geoffrey Hopkins Answer: _______________

**QUESTION NO. 12 (PERSONAL INJURY):** What sum of money, if paid now in cash, would fairly and reasonably compensate Alyssa Wilson for her injuries in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

Answer separately, in dollars and cents, for damages, if any.

a. Physical pain sustained in the past.

Answer: __________________

b. Physical pain that, in reasonable probability, Davante Snowden will sustain in the future.

Answer: _______________

c. Mental anguish sustained in the past.

Answer: __________________

d. Mental anguish that, in reasonable probability, will sustain in the future.

Answer:__________________

e. Physical impairment sustained in the past.

Answer: _______________

f. Physical impairment that, in reasonable probability, Davante Snowden will sustain in the future.

Answer: __________________

g. Reasonable medical and psychological care expenses incurred in the past.

Answer: _______________

h. Reasonable medical and psychological care expenses that, in reasonable probability, will be incurred in the future.

Answer: __________________

**QUESTION NO. 13 (NOMINAL DAMAGES).** If, in answer to Questions 1-6, you found a constitutional violation but no actual injury as to any Plaintiff, what nominal damages do you award that Plaintiff?

ANSWER: $______(One dollar.)

**TAB I – PUNITIVE DAMAGES**

**QUESTION NO. 14 (PUNITIVE LIABLITY).** Do you find by a preponderance of the evidence that any individual Defendant's conduct was motivated by evil motive or intent, or involved reckless or callous indifference to the federally protected rights of others?

Answer "Yes" or "No" to each of the following:

a. Officer Dakota Norris: Yes ___ No ___

b. Investigator Christian Lovelace: Yes ___ No ___

c. Investigator Jonathan Huth: Yes ___ No ___

d. Sergeant Richard Keough: Yes ___ No ___

e. Lieutenant Steven Brock: Yes ___ No ___

f. Officer Long Le: Yes ___ No ___

If you answered "Yes" to Question 14, proceed to Question 15. Otherwise, do not answer any other questions, and the Foreperson should sign and date the verdict and give it to the Court Security Officer.

**QUESTION 15 (PUNITIVE DAMAGES):** What amount of punitive damages, if any, should be assessed against those you answered "Yes" to in answer to Question 14?

Answer in dollars and cents, if any.

a. Officer Dakota Norris: $_____________

b. Investigator Christian Lovelace: $_____________

c. Investigator Jonathan Huth: $_____________

d. Sergeant Richard Keough: $_____________

e. Lieutenant Steven Brock: $_____________

f. Officer Long Le: $_____________

If you entered an amount for any part of Question 15, proceed to Question 16. Otherwise, do not answer any other questions, and the Foreperson should sign and date the verdict and give it to the Court Security Officer.

**QUESTION 16 (APPORTIONMENT OF PUNITIVE DAMAGES):** How do you apportion the punitive damages between the Plaintiffs?

Answer by stating a percentage for each person named below. The percentages you find must total 100 percent.

1. Estate of Mark Hopkins ____________________%

2. Alyssa Wilson ____________________%

Total ________100________%

Presiding Juror: ________________________ Date: _______________